```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 2-29-16
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
HUAI ZHOU CHEN,

                        Plaintiff,              1:15-cv-01269 (ALC)

        -against-                     **OPINION AND ORDER**

BOARD OF IMMIGRATION APPEALS and
UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES,

                        Defendants.
------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

       When a United States citizen or lawful permanent resident marries a noncitizen, she may petition the Attorney General to grant lawful permanent resident status to her spouse. If the Attorney General approves the petition, the spouse may become a lawful permanent resident once a visa is available. If the spouse becomes a lawful permanent resident, and the marriage later dissolves, he retains lawful permanent resident status. If he subsequently enters into another marriage to a noncitizen, he may petition the Attorney General to grant lawful permanent resident status to his new spouse. That request is called a spousal second preference petition, and the legal permanent resident spouse is referred to as the petitioner-spouse.

       Concerned about the use of fraudulent marriages to abuse this system, Congress in 1986 amended the immigration laws to require that the Attorney General apply a heightened evidentiary standard to spousal second preference petitions in certain circumstances. That standard requires the petitioner-spouse to demonstrate by clear and convincing evidence that his prior marriage was not entered into for the purpose of evading immigration laws. The statute requires the Attorney General to apply that standard to a spousal second preference petition any time the approval of that petition would occur within five years of the petitioner-spouse

1

acquiring legal permanent resident status based on his prior marriage. The Immigration and Naturalization Service ("INS"), under its authority to pass regulations implementing the immigration laws, initially crafted a regulation that mirrored the statute.[1] However, several years later, the INS crafted a new regulation that differed in an important regard from the statute it was designed to implement. The new regulation mandated that the Attorney General apply the heightened standard to spousal second preference petitions any time the petitioner-spouse's subsequent marriage occurred within five years of the petitioner-spouse acquiring legal permanent resident status based on his prior marriage.

Plaintiff Huai Zhou Chen is a lawful permanent resident, a status he obtained in 2006 through marriage to a United States citizen. He and that citizen divorced in 2007, and that same year, Plaintiff married a Chinese citizen. In 2012, he submitted a petition to the United States Citizenship and Immigration Services ("USCIS"), seeking lawful permanent resident status for his wife. That petition was denied because USCIS found that Plaintiff did not meet the heightened evidentiary standard. The USCIS, and later the Board of Immigration Appeals ("BIA"), required Plaintiff to meet that standard pursuant to the regulation in question here. Plaintiff argues that the regulation conflicts with the statute it implements and therefore, it is invalid, as is the denial of his petition.

This case is about statutory interpretation and about an agency's power to interpret the statutes it is tasked with implementing. Statutory interpretation begins—and often ends—with the plain language of the statute. The relevant section of the regulation contradicts the plain language of the statute; accordingly, that section of the regulation is invalid.

---

[1] After the passage of the Homeland Security Act of 2002, INS ceased to exist as an independent agency of the Department of Justice. The USCIS, as part of the Department of Homeland Security, took over the adjudication of applications for immigration benefits. However, the Board of Immigration Appeals remains a part of the Department of Justice, under the Executive Office for Immigration Review.

## BACKGROUND

I. **Statutory and Regulatory Background**

   A. **The Statute**

In 1986, in an effort to prevent non-citizens from receiving immigration benefits based on fraudulent marriages, Congress amended the Immigration and Nationality Act ("INA"). See Immigration Marriage Fraud Amendments of 1986 ("IMFA"), Pub. L. No. 99-639, § 5(a), 100 Stat. 3537, 3543. Among other amendments, the IMFA added a provision later codified as 8 U.S.C. § 1154(a)(2) ("Section 1154(a)(2)"):

> **(A)** The Attorney General may not approve a spousal second preference petition for the classification of the spouse of an alien if the alien, by virtue of a prior marriage, has been accorded the status of an alien lawfully admitted for permanent residence as the spouse of a citizen of the United States or as the spouse of an alien lawfully admitted for permanent residence, unless—
>     **(i)** a period of 5 years has elapsed after the date the alien acquired the status of an alien lawfully admitted for permanent residence, or
>     **(ii)** the alien establishes to the satisfaction of the Attorney General by clear and convincing evidence that the prior marriage (on the basis of which the alien obtained the status of an alien lawfully admitted for permanent residence) was not entered into for the purpose of evading any provision of the immigration laws.
> In this subparagraph, the term "spousal second preference petition" refers to a petition, seeking preference status under section 1153(a)(2) of this title, for an alien as a spouse of an alien lawfully admitted for permanent residence.
>
> **(B)** Subparagraph (A) shall not apply to a petition filed for the classification of the spouse of an alien if the prior marriage of the alien was terminated by the death of his or her spouse.

8 U.S.C. § 1154(a)(2).

While this statute phrases the Attorney General's approval of the petition in the permissive, as a general matter under the INA:

> "After the investigation of the facts in each case . . . the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative specified in section 1151(b) of this title . . . approve the petition . . ."

3

8 U.S.C. § 1154(b). Therefore, if after investigation of the facts in a spousal second preference petition case, the Attorney General finds that the facts in the petition are true, the alien on behalf of whom the petition is made is an immediate relative, and the requirements described in Section 1154(a)(2) have been met, the Attorney General *shall* approve the petition.

**B.     The Former Regulation**

Following the passage of the IMFA, the Attorney General proposed a set of regulations to implement it. See 53 Fed. Reg. 2426. In August 1988, a final rule implementing Section 1154(a)(2) was promulgated. See 53 Fed. Reg. 30011-01. That rule mirrored the statute and provided:

> **(2)** Ineligible alien petitioners and beneficiaries—
> **(i)** The Service may not approve a spousal second preference petition filed by an alien who, by virtue of a prior marriage, has been accorded the status of an alien lawfully admitted for permanent residence as the spouse of a citizen of the United States or as the spouse of an alien lawfully admitted for permanent residence unless:
> **(A)** A period of five years has elapsed after the date the alien acquired permanent resident status; or
> **(B)** The alien establishes by clear and convincing evidence that the prior marriage (on the basis of which the alien obtained lawful permanent resident status) was not entered into for the purpose of evading the immigration laws; or
> **(C)** The marriage through which the petitioner obtained permanent residence was terminated through the death of the petitioner's spouse.

8 C.F.R. § 204.1(a)(2)(i); see also 53 Fed. Reg. 30011-01.

**C.     The Current Regulation**

In August 1991, the Commissioner of the INS proposed an amendment to 8 C.F.R. § 204.1(a)(2)(i). See 56 Fed. Reg. 41084. The final amended rule was promulgated on September 9, 1992. See 57 Fed. Reg. 41053. The amendment moved the location of the regulation, but more

substantively, it changed the regulation so that it no longer mirrored the text of the statute. The amended regulation provides:

> **(1)** Eligibility. A United States citizen or alien admitted for lawful permanent residence may file a petition on behalf of a spouse.
>> **(i)** Marriage within five years of petitioner's obtaining lawful permanent resident status:
>>> **(A)** A visa petition filed on behalf of an alien by a lawful permanent resident spouse may not be approved if the marriage occurred within five years of the petitioner being accorded the status of lawful permanent resident based upon a prior marriage to a United States citizen or alien lawfully admitted for permanent residence, unless:
>>>> **(1)** The alien establishes by clear and convincing evidence that the prior marriage (on the basis of which the alien obtained lawful permanent resident status) was not entered into for the purpose of evading the immigration laws; or
>>>> **(2)** The marriage through which the petitioner obtained permanent residence was terminated through death.

8 C.F.R. § 204.2(a)(2)(1) (the "Regulation"). This regulation remains in effect today.

Relevant here, the statute provides: "The Attorney General may not approve a spousal second preference . . . unless a period of 5 years has elapsed after the date the alien acquired the status of the alien lawfully admitted for permanent residence," or the petitioner meets a heightened burden of showing by clear and convincing evidence that his prior marriage was bona fide. 8 U.S.C. § 1154(a)(2). The prior regulation mirrored this. See 8 C.F.R. § 204.1(a)(2)(i) ("The Service may not approve a spousal second preference petition filed by an alien . . . unless [a] period of five years has elapsed after the date the alien acquired permanent resident status . . ."). But the current regulation provides, "A visa petition filed on behalf of an alien by a lawful permanent resident spouse may not be approved if the marriage occurred within five years of the petitioner being accorded the status of lawful permanent resident based on a prior marriage . . ." 8 C.F.R. § 204.2(a)(2)(1). Whether this provision of the regulation is a permissible interpretation of the statute is at issue here.

5

## II. Factual Background

Plaintiff Hua Zhou Chen was accorded lawful permanent resident ("LPR") status on February 2, 2006, on the basis of his marriage to a United States citizen. (Pl.'s 56.1, ¶ 1.) He and that citizen subsequently obtained a divorce, which was finalized on May 2, 2007. (Id.) On August 6, 2007, Plaintiff married Ping Xiao, a citizen and resident of China. (Id., ¶ 2.)

In November 2007, less than five years after he had been accorded LPR status, Plaintiff filed on his wife's behalf a Petition for an Alien Relative, commonly referred to as Form I-130 (the "First Petition"). (A.R. 88.)[2] USCIS ultimately denied Plaintiff's First Petition in November 2010, on the ground that Plaintiff had failed to establish by clear and convincing evidence that his marriage to his first wife was not entered into for the purpose of evading the immigration laws. (A.R. 88-90.) The USCIS informed Plaintiff that he was subjected to this burden under 8 C.F.R. § 204.2(a)(1)(i)(A). (A.R. 89.)

On August 28, 2012, more than five years after he had been accorded LPR status, Plaintiff filed on his wife's behalf a second Petition for an Alien Relative (the "Second Petition"). (Pl.'s 56.1, ¶ 3.) In October 2013, USCIS issued a request seeking evidence from Plaintiff that his first marriage was bona fide and indicating that it would subject the Second Petition to the burden described in 8 C.F.R. § 204.2(a)(1)(i)(A). (A.R. 68-70.) In response, Plaintiff submitted evidence that his first marriage was bona fide but also argued that 8 C.F.R. § 204.2(a)(1)(i)(A) was invalid, as it contradicted the statute that it implemented, 8 U.S.C. § 1154(a). (A.R. 71-72.)

On February 4, 2014, the USCIS denied the Second Petition, again on the ground that Plaintiff had failed to establish by clear and convincing evidence that his marriage to his first

---

[2] "A.R." refers to the administrative record filed in this case. (ECF No. 11.)

wife was not entered into for the purpose of evading the immigration laws. (Pl.'s 56.1, ¶ 4.) It is this denial that Plaintiff now challenges.

### III. Procedural Background

Plaintiff's Second Petition was denied by the USCIS on February 4, 2014. (Pl.'s 56.1, ¶ 4.) He timely appealed that decision to the BIA, renewing his argument that the Regulation was contrary to 8 U.S.C. § 1154(a). On January 9, 2015, the BIA affirmed USCIS's denial of the petition, writing that the Board was "without authority to rule on the validity of the regulations promulgated by the Attorney General." (A.R. 3-4.)

On February 20, 2015, Plaintiff filed suit against USCIS and the BIA in this Court under the Administrative Procedure Act, which requires reviewing courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). The material facts not being in dispute, the parties cross-moved for summary judgment. (ECF Nos. 12-23.) The Court ordered supplemental briefing on December 10, 2015, and after the parties submitted that briefing, the Court heard oral argument on January 6, 2016. (ECF No. 24-26.)

## LEGAL STANDARD

### I. Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dall. Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

"Where a court reviews agency action under the APA, summary judgment serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. E.P.A., 8 F. Supp. 3d 500, 517 (S.D.N.Y. 2014) (quoting Bennett v. Donovan, 4 F. Supp. 3d 5, 8 (D.D.C. Sept. 30, 2013)) (internal quotation marks omitted) (citing Physicians Comm. for Responsible Med. v. Johnson, 436 F.3d 326, 331 (2d Cir. 2006); Consumer Fed'n of Am. & Pub. Citizen v. U.S. Dep't of Health & Human Servs., 83 F. 3d 1497, 1501 (D.C. Cir. 1996)). "Where, as here, a party seeks review of agency action under the APA and the entire case on review is a question of law, summary judgment is generally appropriate." Noroozi v. Napolitano, 905 F. Supp. 2d 535, 541 (S.D.N.Y. 2012) (citation and internal quotation marks omitted); see also Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (same).

## DISCUSSION

**I.     The Chevron Framework**

Challenges to an agency's interpretation of a statute that it administers are reviewed under the framework set out in Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984). At Step One of the analysis, the Court must determine "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron, 467 U.S. at 842-43. If, however, "the statute is silent or ambiguous with respect to the specific issue," id. at 843, the Court must move to Step Two, where "the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. At Step Two, for an agency's interpretation to be upheld, "[t]he

court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." Id. at 843 n. 11. Rather, "regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." Id. at 844.

At Chevron Step One, "[t]o ascertain Congress's intent, we begin with the statutory text because if its language is unambiguous, no further inquiry is necessary. If the statutory language is ambiguous, however, we will resort first to canons of statutory construction, and, if the statutory meaning remains ambiguous, to legislative history." Cohen v. JP Morgan Chase & Co., 498 F.3d 111, 116 (2d Cir. 2007) (internal citations and modifications omitted). The language is unambiguous here, and so that is the beginning and end of the analysis.

## II. Application

Plaintiff argues that the regulation at issue is an impermissible interpretation of Section 1154(a) of the INA. Per the Regulation, second spousal preference petitions filed on behalf of an alien may not be approved if the *marriage* occurred within five years of the petitioner being accorded LPR status based on a prior marriage, unless the petitioner establishes by clear and convincing evidence that the prior marriage was not entered into for the purposes of evading immigration laws.[3] 8 C.F.R. § 204.2(a)(1)(i). Section 1154(a), however, does not explicitly tie the five years to the time of the marriage. It instead provides that "the Attorney General may not approve" a spousal second preference petition filed in behalf of an alien "unless a period of 5 years has elapsed after the date the alien acquired the status of an alien lawfully admitted for

---

[3] There is another exception in both the statute and the regulation, not relevant here, whereby regardless of timing, a spousal second preference petition may be approved without meeting any heightened burden in cases where the prior marriage was terminated by death. See 8 U.S.C. § 1154(a); 8 C.F.R. § 204.2(a)(1)(i)(A)(2).

permanent residence" or the petitioner establishes by clear and convincing evidence that the prior marriage was not entered into for the purpose of evading immigration laws. 8 U.S.C. § 1154(a).

The undisputed meaning of the regulation is as follows: if a lawful permanent resident who has obtained that status through a prior marriage *enters into a second marriage* within five years of obtaining that status, he will forevermore be required to prove by clear and convincing evidence that his prior marriage was not fraudulent in order to obtain LPR status for his second spouse. But, Plaintiff argues, this contravenes the clear meaning expressed by Congress in the statute. The unambiguous meaning of the statute, Plaintiff contends, is as follows: if a lawful permanent resident who has obtained that status through a prior marriage enters into a second marriage, he only must prove by clear and convincing evidence that his prior marriage was not fraudulent in order to obtain LPR status for his second spouse *if the Attorney General approves the petition* within five years of obtaining LPR status.

The text of the statute is clear. At Step One of Chevron, the Court must determine whether "the intent of Congress is clear." Chevron, 467 U.S. at 842-43. This inquiry begins "with the statutory text because if its language is unambiguous, no further inquiry is necessary." Cohen, 498 F.3d at 116. Here, the text in question reads:

> "The Attorney General may not approve a spousal second preference petition for the classification of the spouse of an alien if the alien, by virtue of a prior marriage, has been accorded the status of an alien lawfully admitted for permanent residence as the spouse of a citizen of the United States or as the spouse of an alien lawfully admitted for permanent residence, unless a period of 5 years has elapsed after the date the alien acquired the status of an alien lawfully admitted for permanent residence, or [the alien establishes by clear and convincing evidence that the prior marriage was not fraudulent]."

8 U.S.C. § 1154(a) (internal numbering omitted). Per the text of the statute, even absent clear and convincing evidence, the Attorney General may approve a spousal second preference petition where "a period of 5 years has elapsed after the date the alien acquired" LPR status.

The plain meaning is clear: the statute requires the heightened burden only if five years have not elapsed between the time that the petitioner acquired LPR status and the time the Attorney General approves the petition. The five-year-period begins running on "the date the alien acquired the status of an alien lawfully admitted for permanent residence." 8 U.S.C. § 1154(a). Once five years have "elapsed after the date," the Attorney General may approve the petition—and indeed, he *shall* approve the petition if "after investigation of the facts in each case," "he determines the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative . . ." 8 U.S.C. § 1154(b).[4]

The Government, however, argues that the statute is ambiguous "because it does not provide a precise endpoint for measuring the accrual of the five-year period," leaving a gap that the Regulation fills "by selecting the date of the marriage, an interpretation that is consistent with Congress's intent to curtail immigration-related marriage fraud." (Gov. Mot. Summ. J. 9.) The Government argues that the statute is so ambiguous as to allow four possible "endpoints" for the five-year period: (1) the second marriage; (2) the filing of the petition; (3) the adjudication of the petition; or (4) final appellate review of the petition. (Gov. Mot. Summ. J. 13.) In essence, the Government asks the Court to read the statute to provide that the Attorney General may not approve a spousal second preference petition unless a period of five years has elapsed between the date the alien acquired LPR status and some other event—one of the four listed above.

But "[a] court must interpret a statute as it is, not as it might be, since courts must presume that a legislature says in a statute what it means and means in a statute what it says." Baker v. Johnson, 109 F. Supp. 3d 571, 576-77 (S.D.N.Y. 2015) (internal alteration omitted)

---

[4] As the parties acknowledged at oral argument, this lack of discretion sets the instant case apart from cases like Lopez v. Davis, 531 U.S. 230 (2001), in which the Supreme Court permitted an agency to rely on a factor not mentioned in the statute as the basis for a categorical rule that excluded a class of otherwise eligible individuals from *discretionary* relief.

11

(quoting Arciniaga v. Gen. Motors Corp., 460 F.3d 231, 236 (2d. Cir. 2008)). Neither the date of the second marriage, nor the filing of the petition, nor the final appellate review of the petition is mentioned anywhere in the text of the statute, and the Court may not re-write the statute to include these possible endpoints and exclude the endpoint actually in the text: five years from the date the alien acquired LPR status, at which point the Attorney General may approve the petition.

Any other reading is not supported by the text. At oral arguments, the Government repeatedly urged that the Court consider the statute's legislative history in deciding whether it is ambiguous. But "we begin with the statutory text because if its language is unambiguous, no further inquiry is necessary." Cohen, 498 F. 3d at 116. That is the situation here. Where the statute permits but one reading, it is inappropriate to resort to legislative history.

Furthermore, even if the Court were to find the text of the statute to be ambiguous and proceed to Chevron Step Two, the current regulation would be an impermissible interpretation of the statute. Plaintiff alternately advanced the argument that the "endpoint" referred to the filing of the petition, because pursuant to a separate regulation, a "petitioner must establish that he or she is eligible for the requested benefit at the time of filing the benefit request and must continue to be eligible through adjudication." 8 C.F.R. § 103.2(b)(1). Per Plaintiff, while the statutory text refers to the Attorney General's approval, this regulation has the effect of rendering the date of filing the relevant date. The Court does not delve into this argument, as the text is clear in its reference to approval. But even if the statute were ambiguous as to whether the "endpoint" is the time of filing or the time of approval, the fact that there are two permissible interpretations does not give the Government *carte blanche* to pick another interpretation entirely. While the Court "must uphold the [agency's] judgment as long as it is a permissible construction of the statute,

even if it differs from how the court would have interpreted the statute in the absence of an agency regulation," Sebelius v. Auburn Reg'l Med. Ctr., 133 S.Ct. 817, 826 (2013), it may not uphold an interpretation that is "manifestly contrary to the statute." Adams v. Holder, 692 F.3d 91, 95 (2d Cir. 2012) (quoting Chevron, 467 U.S. at 844). Whether analyzed at Step One or Step Two of Chevron, the regulation at issue impermissibly conflicts with the statute it implements.

## CONCLUSION

Because the statutory language of 8 U.S.C. § 1154(a)(2)(A) is plain and unambiguous and at odds with the regulation, 8 C.F.R. § 204.2(a)(2)(1), the Court must hold unlawful and set aside the USCIS and BIA decisions based on the regulation, as the decisions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706. Plaintiff's motion for summary judgment is GRANTED and Defendants' motion is DENIED. The decision of the agency is reversed, and the case is remanded with directions to re-consider Plaintiff's petition, applying the standard contained in the statute.

**SO ORDERED.**

Dated: February 29, 2016
       New York, New York

_____
ANDREW L. CARTER, JR.
**United States District Judge**